UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUISIANA STATE, ET AL                      CIVIL ACTION

VERSUS                                      NO. 07-5528

AAA INSURANCE, ET AL                        SECTION "J" (2)

## ORDER AND REASONS

Before the Court is the State of Louisiana's **Motion to Remand (Rec. Doc. 145)**, Defendant ANPAC Companies' **Memorandum in Opposition (Rec. Doc. 149)**, and a **Memorandum in Opposition** filed collectively by the remaining Defendant insurers **(Rec. Doc. 148)**. Oral argument was held on October 19, 2011, at which time the Court orally denied the State's Motion to Remand. *See* Rec. Doc. 169. Now the Court issues its written reasons.

### PROCEDURAL HISTORY AND BACKGROUND FACTS:

In the aftermath of Hurricanes Katrina and Rita, the State of Louisiana, with funding from  the United States Department of Housing and Urban Development, created the Louisiana Road Home program.  The program was designed to distribute federal grants to assist Louisiana residents in their efforts to reconstruct

homes damaged by the Hurricanes.  To date, it is the largest
single housing recovery program in United States history.[1]

The Road Home program is administered by the State of
Louisiana through the Louisiana Recovery Authority.  Consistent
with federal law, Road Home prohibits the distribution of grant
funds that would duplicate payments from other sources.
Accordingly, Louisiana required any homeowner receiving Road Home
funds to execute a limited subrogation/assignment agreement as
part of the grant closing process, assigning his rights against
his insurer to the State in the amount of the Road Home grant.
This allowed the State to proceed against the insurers to recover
Road Home funds used to pay for losses covered by the grantee's
insurance.

The case before the Court, termed the "Road Home
Litigation." was initiated by the State of Louisiana in August
2007 in Orleans Parish Civil District Court.  The State sought to
recoup the funds from over 200 insurers to which Road Home
recipients were entitled that had been assigned to the State
pursuant to the subrogation/assignment agreements.  At the time
the State initiated this action, many Road Home applications

---

[1]  *See* The Road Home, *About Us*,
https://www.road2la.org/about-us/default.htm (last
visited October 17, 2011).

remained unprocessed, and thus, thousands of applicants had not executed subrogation agreements or filed claims against their insurers for losses sustained as a result of the Hurricane. Louisiana law provided that all Hurricane Katrina-related insurance claims must be filed by September 1, 2007 deadline. Aware of this deadline, the State amended its petition and added a class action against the same defendant insurers in order to preserve the rights of those applicants whose applications would be approved in the future, and thus to further preserve its own rights to bring claims which the grant recipients would subsequently assign to the State.  The putative class members consisted of

> "[a]ll current and former citizens of the State of Louisiana who have applied for and received or will receive funds through the Road Home Program, and who have executed or will execute a subrogation or assignment agreement in favor of the State, and to whom insurance proceeds are due and/or owed for damages sustained to any such recipient's residence as result of any natural or man-made occurrence associated with Hurricanes Katrina and/or Rita under any policy of insurance, as plead herein, and for which the State has been or will be granted or be entitled to recover as repayment or reimbursement of funds provided to any such recipient through the Road Home Program."  Rec. Doc. 1-1, pg. 21.

On behalf of the state and the homeowner class members, the class action sought damages, injunctive relief, and a declaration

of these insurers' duties under the "all risk" policies issued to class members.   On September 11, 2007, Defendants removed this case to Federal Court, asserting that federal jurisdiction was proper under the Class Action Fairness Act ("CAFA").   The case was consolidated with the *In re Katrina Canal Breaches Consolidated Litigation* ("Katrina Canal Breaches Litigation") the next day.  In response to the removal, Plaintiff filed a motion to remand, which was denied by Judge Duval.  The State appealed this decision, asserting that CAFA was inapplicable, and that even if it did apply, the Eleventh Amendment barred Defendants from removing a state law action brought by a state in its own courts.  The Court of Appeals affirmed Judge Duval's order denying the State's motion to remand on April 11, 2008.

In November of 2008, the State filed a Motion to Sever its class allegations in the Road Home Litigation, along with a Second Motion to Remand its subrogation claim.  While these motions were pending, certain defendants in the Master Complaint of the Katrina Canal Breaches Litigation, filed a motion to strike the class allegations.  Although this motion did not target the class status in the Road Home Litigation, the State filed a stipulation stating that the class action portion of the Road Home litigation was substantially similar to the class allegations in the Master Complaint.  Accordingly, the State

4

agreed that its class allegations would be bound by whatever ruling Judge Duval issued on class status in the Katrina Canal Breaches Litigation Master Complaint.

Judge Duval denied the State's Motion to Sever the class action claims, as well as its Second Motion to Remand. Defendants thereafter filed a Motion to Dismiss based in part on their belief that "anti-assignment" clauses in their contracts prevented their clients from assigning the benefits of the insurance contracts to the State.  Judge Duval granted this motion in part on March 5, 2009, dismissing the State's extra-contractual claims and claims for declaratory relief, but finding that the anti-assignment clauses did not bar the State's subrogation claim.  Defendants thereafter filed a motion for reconsideration, which Judge Duval denied on April 16, 2009. Judge Duval certified his ruling for interlocutory appeal and stayed the proceedings pending the outcome of the appeal.  This case was then deconsolidated from the Katrina Canal Breaches Litigation and transferred to this Court for disposition on April 17, 2009.

On June 16, 2009, Judge Duval issued an order dismissing the class action in the master complaint in the consolidated Katrina Canal Breaches Litigation.  This order effectively dismissed the class allegations in the Road Home Litigation by virtue of the

State's stipulation agreeing to be bound by that ruling.  As a result, the State filed a Third Motion to Remand these proceedings to state court.  Because Judge Duval had previously stayed the proceedings pending the Fifth Circuit's ruling on the enforceability of the anti-assignment clauses, however, this Court enforced the stay and denied the State's motion without prejudice.

The Fifth Circuit, finding the issue of the enforceability of the anti-assignment clauses to be dispositive but unclear under Louisiana law, certified the question to the Louisiana Supreme Court.  The Louisiana Supreme Court responded that Louisiana's public policy did not preclude the enforceability of anti-assignment clauses to post-loss assignments, but cautioned that the language of the clause "must clearly and unambiguously express that it applies to post-loss assignments" and must therefore be evaluated on a policy by policy basis.[2] Accordingly, unable to resolve the issue en masse, the Fifth Circuit vacated the district court's previous ruling on the motion to dismiss, and remanded the case for further proceedings. After the stay of the proceedings was lifted, the State filed the instant Motion to Remand on September 14, 2011.

---

[2]     *See* Rec. Doc. 129.

6

## THE PARTIES' ARGUMENTS:

### Plaintiff's Arguments

In support of its Motion to Remand, the State first asserts that the dismissal of the class action allegations dissolves any basis for federal jurisdiction which may have previously existed under CAFA.  Specifically, it argues that, because the State of Louisiana is the only remaining plaintiff, and because it is not a "citizen" for jurisdictional purposes, CAFA's "minimal diversity" requirement is no longer satisfied.  Further, because Louisiana's subrogation claims are now the only claims pending, it argues that there is no longer a "class action" within the meaning of CAFA.  Accordingly, because the only basis for federal jurisdiction has been dissolved, the State argues that the Court should exercise its discretion to remand the remaining claim under 28 U.S.C. § 1367(c).

Alternatively, it argues that the Eleventh Amendment does not allow a federal court to require it to litigate its subrogation claims in a federal forum.  Instead, it urges that, as a constitutional sovereign, it is entitled to enforce its own laws in its own courts.  While acknowledging that the Fifth Circuit's decision in the consolidated Katrina Canal Breaches Litigation discussed the Eleventh Amendment issue, it argues that

7

it never reached the issue of Louisiana's sovereign immunity "per se" because it merely held that Louisiana could not extend that immunity to the individual class members it had joined in the suit.  Now that the class action has been dismissed, it urges that the sovereign immunity issue is ripe for decision.

**Defendant's Arguments**

Defendants respond that federal jurisdiction under CAFA is unaffected by the withdrawal of the State's class allegations. In response to the State's arguments that its pending subrogation claim does not constitute a class action under CAFA, Defendants respond that the plain language of CAFA makes clear that the continued existence of a class action is immaterial for purposes of jurisdiction once an action is properly removed.  Further, they point out that courts, including five federal circuit courts of appeal, have rejected the State's argument that the dismissal of the class allegations deprives the Court of jurisdiction. While acknowledging the authority cited by the Defendant insurers, the State contends that the instant case is distinguishable, because in this case, the State has asserted its own independent claims in addition to the now dismissed class allegations.

With respect to the State's argument that minimal diversity no longer exists, Defendants rely on the longstanding and well-

established rule that federal subject matter jurisdiction is determined at the time of removal, and that subsequent events, including changes in party citizenship, cannot operate to divest a court of jurisdiction.  They assert that the time-of-filing rule applies equally to CAFA jurisdiction.  Accordingly, because minimal diversity existed at the time of removal, Defendants assert that the subsequent dismissal of the class allegations and the resulting lack of minimal diversity does not deprive the court of jurisdiction.

Furthermore, Defendants assert that the Court lacks discretion to remand under 28 U.S.C. § 1367(c) because, in this case, there are no "pendent" state law claims over which the Court lacks original jurisdiction.  Instead, they assert that the Court has original jurisdiction over this entire case under CAFA and must therefore exercise this jurisdiction.  Even if the Court does retain discretion to remand under 1367(c), however, Defendants submit that the Court should refrain from remanding the case under these circumstances.

Finally, Defendants maintain that the Eleventh Amendment does not require the Court to remand this case to state court.  Contrary to the State's assertions, Defendants contend that both the Fifth Circuit and Judge Duval directly and clearly held that the State has waived its sovereign immunity by filing the class

action which included private citizens.  In any event, Defendants argue that binding precedent holds that Eleventh Amendment sovereign immunity only applies when a state is a defendant – not a plaintiff, as in this case.

In a separate Memorandum in Opposition, Defendants Republic Fire and Casualty Insurance Company ("Republic") and ANPAC Companies assert an additional basis for denial of the State's Motion to Remand.  Because the viability and substance of the State's claims are governed by federal law, and not state law, Defendants submit that there is no basis for discretionary remand or application of the doctrine of sovereign immunity.  Defendants argue that the prohibition against duplication of benefits, which the State seeks to enforce in this litigation, is governed exclusively by federal law under the Stafford Act.  In particular, Defendants point out that the Stafford Act grants the exclusive right of recovery of duplicate benefits to the federal agency which provided those benefits, only allows such benefits to be recovered "from the recipient" of the benefits, and only allows recovery in accordance "with chapter 37 of title 31," when the applicable "agency head considers it to be in the best interest of the Federal Government."  *See* 42 U.S.C. § 5155. Thus, Defendants argue that there are substantial federal questions as to whether the State is even a proper party to bring

10

the present action to recover duplicate benefits. Because federal courts have no discretion to remand a lawsuit presenting a federal question, Defendants submit that the Court lacks the discretion to remand the State's lawsuit.

Further, it asserts that no Eleventh Amendment concerns are implicated in the present matter because the State is acting as an agent and administrator of a federal program through the Office of Community Development, which has been expressly designated as "the fiscal agent responsible to the U.S. Department of Housing and Urban Development," and not as an independent sovereign seeking to recoup its own state funds. Finally, in the alternative, Defendants Republic and ANPAC Companies argue that federal jurisdiction is proper under the Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA"), 28 U.S.C. §§ 1369 and 1441(e)(1)(A).

## DISCUSSION:

### A. Is Subject Matter Jurisdiction Dissolved by the Withdrawal of the Class Allegations?

A state court defendant may remove to federal court any action that could originally have been brought in federal court. 28 U.S.C. § 1441. Most commonly, cases are removed when the plaintiff's action arises under federal law, *see* 28 U.S.C. §

1331, or when there is complete diversity of citizenship among the parties and at least $75,000 in controversy, *see* 28 U.S.C. § 1332(a).   CAFA, which was enacted in 2005, provides another basis for removal.   The statute amends the general diversity jurisdiction statute and grants federal jurisdiction over "class actions" where (1) the amount in controversy exceeds $5,000,000, (2) there are at least 100 class members in the proposed class, and (3) so-called "minimal diversity" exists between the parties. *See* 28 U.S.C. § 1332(d)(2), (d)(5).   Minimal diversity exists when the state citizenship of any plaintiff class member is different from that of any one defendant.   28 U.S.C. § 1332(d)(2)(A).

At the time this action was originally filed, the Fifth Circuit found that federal jurisdiction existed under CAFA and thus held that the case was removable.   *See In re Katrina Canal Breaches*, 524 F.3d 700, 705-712 (5th Cir. 2008).   Now that the posture of the case has been altered by the withdrawal of the State's class allegations, the State contends that subject matter jurisdiction has been dissolved   because CAFA's minimal diversity requirement is no longer satisfied because a state is not a "citizen" for jurisdictional purposes, and because there is no longer a "class action" within the purview of CAFA.

The statutory text of CAFA does not explicitly state whether

the certification of a class following is required in order for federal jurisdiction to exist.  Until recently, there has been a split in the district courts on this issue.   However, as Judge Fallon recently recognized, "a consensus has begun to emerge." *See Samuel v. Universal Health Servs.*, --- F. Supp. 2d ---, 2011 WL 3349826, at *2 (E.D. La. 2011).  The Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all held that a court retains jurisdiction over a case filed or removed under CAFA even if class certification is denied.  *See Metz v. Unizan Bank*, 649 F.3d 492, 500-501 (6th Cir. 2011); *Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010); *Buetow v. A.L.S., Enters., Inc.*, --- F.3d --- , 2011 WL 3611488, at *1, n.2 (8th Cir. Aug. 18, 2011); *United Steel Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010); *Cunningham Charter Corp. V. Learjet, Inc.*, 592 F.3d 805,806-807 (7th Cir. 2010) ; *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009). While the Fifth Circuit has not squarely addressed the issue, district courts within the Fifth Circuit have consistently held that federal jurisdiction under CAFA is not dependant upon class certification.  *See Samuel*, 2011 WL 3349826, at *2; *Thomas v. Chesapeake Louisiana, L.P.*, No. 09-0888, 2010 WL 1229943, at *2 (W.D. La. Mar. 26, 2010); *Kitts v. Citgo Petroleum Corp.*, No.07-1151, 2009 WL 192550, at *4 (W.D. La. Jan. 23, 2009); *Brinston v.*

13

*Koppers Industries, Inc*., 538 F. Supp. 2d 969, 974-75 (W.D. Tex. 2008); *Broquet v. Microsoft Corp*., No. 08-094, 2008 WL 2965074, at *3 (S.D. Tex. July 30, 2008); *Garcia v. Boyard & Miller, P.C*., No. 06-1936, 2007 WL 1556961, at *5 (N.D. Tex. May 30, 2007).

The plain language of CAFA supports the interpretation that CAFA jurisdiction is not dependant upon class certification. As previously mentioned, CAFA extends diversity jurisdiction to class actions where (1) the amount in controversy exceeds $5,000,000, (2) there are at least 100 class members in the proposed class, and (3) there is minimal diversity between the parties. *See* 28 U.S.C. § 1332(d)(2), (d)(5). The term "class action" is subsequently defined as "any civil action *filed* under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). Thus, courts have recognized that the plain language of the statute only requires the case to be *filed as* a class action. It does not require that the putative class action actually meet the requirements of Rule 23 or that the class be successfully certified. *See, e.g.*, *Metz*, 649 F.3d at 500 ("The 'filed under' language shows that it is the time of filing that matters for determining jurisdiction under CAFA. Congress did not base CAFA jurisdiction on a civil action being 'certified' as

14

a class action, but instead on an action being 'filed under' the rule governing class actions."); *Cunningham*, 592 F.3d at 806 (explaining that "jurisdiction attaches when a suit is *filed* as a class action").

Further, because CAFA merely amends the diversity statute, as opposed to providing a *sui generis* jurisdictional grant, the courts that have considered the issue have also looked to general jurisdictional principles for guidance. *See Metz*, 649 F.3d at 500-501; *Cunningham*, 592 F.3d at 807; *Workers Int'l Union*, 602 F.3d at 1091-92; *Vega*, 564 F.3d at 1268 n. 12. Federal courts examine jurisdictional facts as they exist at the time the case was filed. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004). In cases removed from state court under §1332, jurisdictional requirements must also be satisfied at the time of removal. *Coury v. Prot,* 85 F.3d 244, 248-49 (5th Cir. 1996). Once jurisdiction is properly established, subsequent events will not divest the court of jurisdiction. *Freeport-McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428 (1991); *see also Mobil Oil Corp. v. Kelley,* 493 F.2d 784, 786, 493 F.2d 784 (5th Cir. 1974)(federal question jurisdiction is not destroyed by plaintiff's failure to prove his federal question claim); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)(after removal jurisdiction is established, subsequent events which reduce the amount in

controversy below $75,000 do not deprive the court of jurisdiction); *Coury*, 85 F.3d at 249 (change in parties' citizenship following removal does not destroy diversity jurisdiction); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (subsequent dismissal of the only diverse defendant does not dissolve diversity jurisdiction).

Finding post-removal denial of class certification "not meaningfully different" from other post-removal changes, courts have simply applied this well-settled "time of filing rule" in finding that federal jurisdiction, once properly established, remains unaffected by subsequent events in the litigation. *Samuel*, 2011 WL 3349826, at *4; *see United Steel Workers Int'l Union*, 602 F.3d at 1092 ("We think it more likely that Congress intended that the usual and long-standing principles apply—post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing."); *Cunningham*, 592 F.3d at 807 ("Our conclusion vindicates the general principle that jurisdiction once properly invoked is not lost by developments after a suit is filed, such as a change in the state of which a party is a citizen that destroys diversity."); *Vega*, 564 F.3d at 1268 n. 12 ("[J]urisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of

subject matter jurisdiction."). Thus, even where the lax minimal
diversity requirement of CAFA is no longer satisfied following
denial of class certification, most courts have found that federal
jurisdiction continues.[3]  *See, e.g.*, *Cleary v. Philip Morris Inc.*,
--- F. 3d ---, 2011 WL 3800122, *3 (7th Cir. Aug. 25, 2011); *In re
HP Inkjet Printer Litig.*, No. C05-3580, 2009 WL 282051, at *2 (N.D.

_____

[3]  The legislative history of CAFA appears to also support
this interpretation.  The Senate Report for CAFA
explains:

> **Under existing law (which S. 5 would not change),
> "diversity" of citizenship between the parties
> must exist both at the time a complaint is filed
> and at the time a complaint is removed to federal
> court.  For this reason, the federal court would
> generally only need to measure the diversity of
> the parties at the outset of the litigation . . .
> The Supreme Court established this principle in
> *St. Paul Mercury Indem. Co. v. Red Cab Co.*,
> stating that "events occurring subsequent to
> removal which reduce the amount recoverable,
> whether beyond the plaintiff's control or the
> result of his volition, do not oust the district
> court's jurisdiction once it has attached." The
> same would be true if a case was removed to
> federal court because minimal diversity existed at
> the time and, because of a later event, minimal
> diversity was eliminated. This would occur if, for
> example, the federal court dismissed the claims of
> out-of-state plaintiffs, leaving only the claims
> of in-state plaintiffs against an in-state
> defendant intact. "It uniformly has been held that
> in a suit properly begun in federal court the
> change of citizenship does not oust the
> jurisdiction. The same rule governs a suit brought
> in a state court and removed to federal court."
> S. Rep. No. 109-14, at 60-61 (2005)(footnotes and
> internal citations omitted).**

Cal. Feb. 5, 2009); *Colomar v. Mercy Hosp., Inc.*, No. 05-22409-CIV, 2007 WL 2083562 (S.D. Fla. 2007); *Genenbacher v. Centurytel Fiber Co. II, LLC*, 500 F. Supp. 2d 1014, 1016 (C.D. Ill.2007); *but see Arabian v. Sony Electronics Inc.*, 2007 WL 2701340, at *7 (S.D. Cal. Sep. 13, 2007)(finding that lack of minimal diversity after denial of class certification required dismissal).

Finally, as other courts have recognized, policy considerations weigh in favor of retaining federal jurisdiction following the denial of class certification.  The principle of "once jurisdiction, always jurisdiction" is informed by a desire to promote efficiency and avoid expense and delay. *Cunningham*, 592 F.3d at 807.  It also avoids shunting cases between court systems in what amounts to a "jurisdictional ping-pong game." *United Steel Workers Int'l Union*, 602 F.3d at 1090.  Furthermore, if federal jurisdiction was dependant upon class certification, the purposes of CAFA would be frustrated.  Many courts have expressed concerns that, if class certification were a prerequisite to CAFA jurisdiction, the denial of class certification "will invite plaintiffs to take another bite at the certification apple in state court under the same facts but potentially different certification standards," thereby frustrating Congressional intent that more class actions should be litigated in federal courts. *Samuel*, 2011 WL 3349826, at *6; *see also Cunningham*, 592 F.3d at 807 ("An even more important consideration is that the policy behind the Class

18

Action Fairness Act would be thwarted if because of a remand a suit that was within the scope of the Act by virtue of having been filed as a class action ended up being litigated as a class action in state court.").

Here, the Court finds the analysis cited above persuasive, and adopts it as such.  At the time this action was originally filed and removed, the Fifth Circuit found that federal jurisdiction existed under CAFA.  *See In re Katrina Canal Breaches*, 524 F.3d 700, 705-712 (5th Cir. 2008).  Accordingly, neither the State's subsequent withdrawal of its class allegations nor the fact that minimal diversity no longer exists "ousts" the Court of its jurisdiction over this case.

Furthermore, under these circumstances, considerations of expediency, judicial economy, and equity weigh heavily in favor of retaining jurisdiction.  This case has been pending in federal court since 2007, and since the time that it was removed, numerous substantive legal issues have been litigated by the parties and decided by the federal courts.  Remanding the case at this juncture would essentially nullify the countless hours of effort expended by both the parties and the courts and would only serve to delay the resolution of the remaining claims.  Notably, Judge Duval invited the State to dismiss its class allegations in consideration of the possibility of remanding the case as early as March 5, 2009, *see* Case No. 05-4182, Rec. Doc. 18033, p. 5-6,

but the State nonetheless continued to maintain its class allegations and continued to litigate substantive issues in the federal forum.  If the Court decided to remand the remaining claims, nothing would preclude the State from attempting to re-litigate these previously decided substantive issues in the state courts, or from seeking to reassert its class allegations, which, as explained above, would frustrate the goals of CAFA.  While the State professed to have no such intention at oral argument, the mere potential is sufficient cause for concern.

Additionally, the Court notes that equitable principles counsel against remanding the case solely on the basis of the withdrawal of the class allegations.  The State has sought and obtained important substantive benefits through the continued maintenance of its class allegations.  The State admitted at oral argument that its intention  in asserting and maintaining the claims of the putative class members was to toll the claims for which it had not obtained subrogation agreements prior to the September 1, 2007 deadline for filing Hurricane Katrina-related insurance claims.[4]  The state subsequently relied on the tolling of these claims in arguing that its subrogation claims were not time-barred.  Fairness dictates that the State should not be allowed to rely on the maintenance of the class allegations to further its interests, only to stipulate them away in an effort

---

[4]    *See* LA. REV. STAT. § 22:658.3.

to return to state court.  Other courts have rejected similar
attempts of forum manipulation.  *See Braud v. Transp. Serv. Co.
of Ill.*, 445 F.3d 801, 808 (5th Cir. 2006);  *In re Burlington
Northern Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010).

**B.  Does the Eleventh Amendment Require Remand?**

Alternatively, the State urges that its Eleventh Amendment
sovereign immunity deprives the Court of jurisdiction.  It
contends that the Fifth Circuit never reached the issue of its
Eleventh Amendment immunity "per se" because it based its holding
on the fact that a state cannot extend that immunity to the
private citizens in the class action.  The Court does not read
the Fifth Circuit's holding quite so narrowly.

After expressing at least theoretical disagreement with the
Defendants' argument that a state enjoys absolutely no Eleventh
Amendment immunity as a plaintiff, the Fifth Circuit specifically
held that it would "ultimately conclude that any immunity from
removal to federal court was waived by the addition of the class
of private citizens in the amended complaint, and *relatedly* that
immunity of the State from removal to federal court does not
extend to the members of the class."  *In re Katrina Canal
Litigation Breaches*, 524 F.3d at 707 (emphasis added).  Thus, the
Court did not merely hold that the State's sovereign immunity did
not extend to the members of the class, as the State suggests,
but *also* held that the addition of the class allegations waived

whatever immunity it might have had in this case.  It did not
reach the broader issue of whether the Eleventh Amendment
precluded removal precisely *because* it found waiver had
occurred.[5]  Under the law of the case doctrine, a district court
is precluded from reexamining issues of law or fact decided on
appeal.  *Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co.
of America*, 272 F.3d 276, 279 (5th Cir. 2001).  Accordingly, the
Eleventh Amendment does not require this case to be remanded.

**C. Does §1367 Provide the Court with Discretion to Remand?**

Finally, the State contends that, even if the Court
originally had jurisdiction under CAFA, it should exercise its
discretion pursuant to §1367(c) to remand the case.  Because the
original basis for federal jurisdiction under CAFA – i.e., the
class allegations – have been dismissed, leaving only its state
law subrogation claims, the State argues that §1367(c) provides
the Court with discretion to remand.  Defendants contend that the
State mischaracterizes the nature of its own claims, and thus
argues that its attempts to invoke §1367(c) are misguided.  It
argues that its claims aren't "independent," but were asserted as

---

[5]   As Defendants have pointed out, this holding has
essentially been confirmed by a subsequent Fifth Circuit
opinion in which another Fifth Circuit panel held that it
was bound by the prior holding in the consolidated
Katrina Canal Breaches Litigation that the State had
waived its sovereign immunity.  *See Louisiana, ex rel.
Caldwell v. Allstate Insurance Co.*, 536 F.3d 418, 431-32
(5th Cir. 2008).

the representative plaintiff on behalf of the putative class members.

A few cases, although not cited in the State's briefs or addressed at oral argument, have applied the supplemental jurisdiction statute, 28 U.S.C. § 1367, following dismissal of class allegations in cases removed under CAFA.  For example, in *Giannini v. Schering-Plough Corp.*, following removal to federal court under CAFA, the plaintiff voluntarily dismissed his class allegations and subsequently sought remand to state court.  No. 06-06823, 2007 WL 1839789, at *2-4 (N.D. Cal. June 26, 2007). The court framed the issue as whether it should exercise its discretionary supplemental jurisdiction under §1367 and concluded that interests of economy, convenience, fairness, and comity all suggested that it should decline supplemental jurisdiction and remand the cases to state court.  *Id.* at *2-5; *see also Seyboth v. General Motors Corp.*, 2008 WL 1994912, at *2 (M.D. Fla. May 8, 2008)(declining to exercise supplemental jurisdiction after denial of class certification).

There are, indeed, certain similarities between a court's decision on whether to continue to exercise CAFA jurisdiction over the remaining state law claims following the dismissal of class allegations in a case removed under CAFA, and that of a court considering whether to exercise supplemental jurisdiction after the dismissal of a federal claim.  As one commentator

noted, "[i]n each situation, the foundation that originally justified federal jurisdiction has eroded away, leaving state law claims in something of a limbo. G. Shaun Richardson, *Class Dismissed, Now What? Exploring the Exercise of CAFA Jurisdiction After the Denial of Class Certification*, 39 N.M. L. REV. 121, 130 (2009). This commentator has criticized the application courts' application of the supplemental jurisdiction statute as misguided. *See id.* at 134. This approach requires reading a class certification requirement into the CAFA statute, where clearly none is present. *Id.* Additionally, it requires "contortion" of the text of §1367 in order to fit class allegations, which are not themselves "claims," under the language of the statute as "claims over which it [had] original jurisdiction." *Id.* at 130-31; *see* 28 U.S.C. § 1367(c)(3). The Court agrees with this analysis.

More directly, however, the plain language of CAFA obviates the need to resort to §1367. The language of CAFA states grants original jurisdiction over "civil action" where the requirements of CAFA are met, and not simply the class allegations within that action. 28 U.S.C. § 1332(d)(2). The statutory text goes on to state that CAFA "shall apply to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). The statute goes on to define a class certification order as "an order issued

24

by a court approving the treatment of *some or all aspects of a civil action as a class action.*"  28 U.S.C. § 1332(d)(1)(c)(emphasis added).  Thus, CAFA specifically contemplates that some parts of a civil action may exist independently of the class action and nonetheless expressly states that CAFA jurisdiction applies to the "civil action" as a whole – not just to individual claims within that action.  *See Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 808 (5th Cir. 2006)(explaining that "it is the 'action,' not claims against particular defendants, that is removable")(citing *Dinkel v. General Motors Corp.*, 400 F. Supp. 2d 289, 293 (D. Me. 2005); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1196 (11th Cir. 2007)(concluding that "in light of the plain language of CAFA, removal under the statute encompasses all the claims in the 'action' as a whole . . . ").  As a result, even if the state is correct that its claims are independent of the now-dismissed class allegations, the Court nonetheless concludes that jurisdiction under CAFA extends to those claims, as well.  Thus, the supplemental jurisdiction statute is inapplicable.

This case was removed pursuant to the diversity statute, as amended by CAFA.  The Supreme Court has clearly indicated that federal jurisdiction under §1332 is not discretionary.  *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 356 (1988). A court exceeds its authority by remanding a case on grounds not

permitted by the controlling statute.  *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345 (1976).  In the absence of other controlling authority providing discretion to remand, the Court concludes that it must exercise the jurisdiction Congress has conferred on it.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)(describing the "virtually unflagging obligation" of federal courts to exercise the jurisdiction conferred upon them).

**CONCLUSION**

Accordingly, for the foregoing reasons, the State of Louisiana's Motion to Remand should be **DENIED**.[6]

New Orleans, Louisiana, this 28th day of October, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[6] Because the Court concludes that the State's Motion to Remand should be denied without reference to separate opposition filed by Defendants Republic and ANPAC Companies, it is unnecessary to address the arguments raised therein.